SANTA FE PACIFIC R. R. CO., Garnishee, Plaintiff in Error, EMIL BOSSUT et al., Defendants in Error.

### SYLLABUS BY THE COURT.

1. COMMON CARRIER—LIEN OF.—A common carrier has a special interest in, and a lien on property attached for freight due it for its transportation.

2. GARNISHMENT—PRACTICE—APPEAL.—A garnishee is a party to the proceedings between the creditor and original defendant, and on final judgment being given can appeal therefrom.

3. ATTACHMENT—GOODS IN TRANSITU.—Goods in the custody of a railroad company, *in transitu* within the Territory, are subject to attachment.

*Error* to the District Court of Bernalillo County, Second Judicial District.    Affirmed.

Statement of Facts by the Court.

An action in assumpsit was brought by Emil and Juan Bossut, against Frank Pursch and Jacob Kaskel, in the district court of Bernalillo county, to recover the sum of $3,180. The complaint was filed on March 10, 1898, and on the following day bond and affidavit for attachment were filed, the affidavit alleging that the defendants were not residents of this Territory. Writ of attachment and summons issued on March 12, 1898, and on the same day the sheriff of Bernalillo county seized and took possession of a certain case of merchandise then in the warehouse of the railroad company at Gallup, New Mexico, of which it had possession as a common carrier, being engaged in transporting the same to San Francisco, Cal., as the property of the defendants, Frank Pursch and Jacob Kaskel.

On March 22, 1898, the railroad company as garnishee filed an answer, denying that it had in its possession or under its control any property belonging to said Pursch or Kaskel,

or either of them, and prayed to be discharged as such garnishee.

Service against the defendant was obtained by publication, and failing to appear on the tenth day of June, 1898, judgment was entered against them for the sum of $3,180.

On April 19 and May 28, 1898, the garnishee filed notices and motions, supported by affidavits, for an order to require the sheriff to return to its possession the case of merchandise on which he, the sheriff, had levied, setting up in said motions, (1) That the sheriff had no right under any writ issued in the case to take forcible possession of the property which he had seized. (2) That the property was not the property of the defendants, Pursch and Kaskel. (3) That the railroad company having been garnisheed in said cause, the sheriff had no right to take from its custody by attachment property which it was carrying as a common carrier, over its line of road under a bill of lading, which showed that Isaac Levy delivered to the A., T. & S. F. Railway Co. at New York, a case of goods to be delivered by it to J. Gibbs, as consignee, at San Francisco, California. (4) That the Santa Fe Pacific R. R. Co., has a special ownership in the property and a lien for its freight charges which were unpaid, amounting to $7.87.

On June 13, 1898, the motion of the garnishee was heard, and an order was entered overruling it, but giving the railroad company a prior lien upon the property seized for the freight charges due it.

Defendants in error filed a motion to quash the writ of error, because it was sued out of this court on July 14, 1898, and was made returnable to July, 1898 term of the Supreme Court.

C. N. STERRY and CHILDERS & DOBSON, for plaintiff in error.

1. When property is seized by an officer of a court, by virtue of any process issued out of said court, such property is considered as in the custody of the court and under its control. Any person, other than a party to an action, in which process has been issued, having the right to the custody and possession of such property, as against an officer holding the possession of the same, can, by motion, petition or otherwise,

appear in the action and have the property surrendered by direction of the court. It is utterly immaterial as to whether such application be made by motion or petition or bill in intervention. *Krippendorf v. Hyde*, 110 U. S. 276; *Lanmon v. Feusier*, 111 U. S. 17; *Covel v. Heyman*, 111 U. S. 176; *Gumbel v. Pitken*, 124 U. S. 131; *Byers v. McAuley*, 149 U. S. 608; *The M. M. Chase*, 37 Fed. 708.

We quote from the third point in the syllabi in the case of Krippendorf v. Hyde et al., supra, as follows:

"When property in the possession of a third person claiming ownership is attached by a marshal on mesne process issuing out of a circuit court of the United States as the property of a defendant, citizen of the same state as the person claiming it, such person has no adequate remedy against the marshal in the state court, and may seek redress in the circuit court having custody of the property by ancillary proceedings; as, for instance, if the original proceeding is in equity, by a petition *pro interesse suo*, or by ancillary bill, or by summary motion, according to circumstances; or if it is at common law, by a summary motion or by a proceeding in the nature of an interpleader; or if proceedings authorized by statutes of the state in which the cause is pending afford an adequate remedy, by adopting them as part of the practice of the court."

2. It is admitted that the box of goods in controversy was in the possession of the Santa Fe Pacific Railroad Company as a common carrier, in the course of transportation by it from Albuquerque, New Mexico, to San Francisco, California, under the bill of lading shown in evidence; that while it was at Gallup, New Mexico, temporarily on account of the switching of cars to remake up a train, in which the box was being carried, the sheriff forcibly took possession of the same under a writ of attachment, issued in the cause of action of Emil Bossut and Juan Bossut against Frank Pursch and Jacob Kaskel; that this box had been shipped by Isaac Levy, of New York, to one J. Gibbs at San Francisco. It is also admitted, and was found by the court below, that the Santa Fe Pacific Railroad Company had a lien upon the property seized under the writ of attachment prior to the lien created by such seizure, if any was created, and prior to any lien created by service of attachment and garnishment.

Under the above stated facts the forcible taking of the box of goods in controversy by the sheriff, under the writ of attachment, from the possession of the railroad company was, as against the railroad company, a wrongful taking, and the railroad company had the right to have the custody and possession of said box of goods restored to it.

While it would go without saying that the railroad company had a lien for its charges upon the freight in question, we desire to call the attention of the court to the character of this lien, by citations from the text books and authorities.

We first quote from Hutchison on Carriers 2 ed., paragraph 476, as follows:

"As security for his compensation for the carriage of the goods, and for the advances which he has been required to make for the owner in order to further their transportation, the carrier has what is called a lien upon them, which is nothing more than a right to retain possession of them until such charges have been paid or tendered, and differs in no important respect from the right which the law gives to other bailees of chattels who have performed labor or expended their means upon them at the request of the owner. The owner of the goods has no right to demand their possession until he has paid or tendered payment for the service and advances, nor, as a general rule, has the carrier a right to the payment of his freight until the goods are tendered to the party to whom they are consigned."

Also from section 482 as follows:

"The lien takes precedence of the claims of the general creditors of the owner or consignee of the goods, and the plaintiff in an action against him, who seizes or levies upon them, must pay the carrier his freight before he can legally take them from his possession; but the plaintiff or officer who pays the carrier will be substituted to his lien upon the goods."

See also Elliott on Carriers, vol. 4, paragraph 1670, et seq.

We quote from the opinion of Justice Brewer, speaking for the court, in the case of Rucker v. Donovan et al., 13 Kansas 251, as follows:

"One question more remains for consideration. The constable paid the freight charges when he took possession

of the goods from the carrier. These charges were neither paid nor tendered to him before this suit was commenced. Who, then, had the right of possession at that time? Clearly the officer. The lien for charges was prior to the claims of creditors, or the rights of the vendor. 2 Kent 541; Oppenheim v. Russell, 3 Bos. & Pul. 42. The carrier's possession could not be disturbed until they were paid. The officer was justified in paying them, and having paid them was substituted to all the rights of the carrier. Before his possession then could be disturbed he must be reimbursed the money by him thus advanced." See also Campbell v. Connor, 70 N. Y. 424.

3.   These goods being in the possession and custody of the Santa Fe Pacific Railroad Company, as a common carrier, in the course of transportation from New York City to San Francisco, were not subject to seizure under the writ of attachment or attachment by garnishment process.

It seems now well settled that on account of the quasi-public character of a common carrier, and its business, that, as a matter of public policy, the courts will not permit its business to be interfered with by permitting property being carried by it as a common carrier to be seized, either directly under a writ of attachment or indirectly by notice of garnishment.

Judge Elliott, in his recent admirable work on railroads, in section 1538, volume 4, treats of the proposition above stated, as follows:

"ATTACHMENT—GARNISHMENT:—The question whether property in the hands of a common carrier while *in transitu* can be attached or reached by process in garnishment has not been so much discussed in reference to railroad companies as with reference to express companies, and the rules upon the subject have not been very clearly laid down. We think, however, that the authorities warrant the conclusion that property while *in itinere* can not be attached by creditors nor reached by process in garnishment."

See also Waples on Attachment, pages 601-2.

One of the earliest cases upon this question is that of the Illinois Central R. R. Co. v. Cobb et al., 48 Ill. 402, and we

quote from the opinion of Chief Justice Breese, who delivered
the opinion of the court, as follows:

"The question is, can a railway company be held liable
to judgment on the process of garnishment, merely on the
ground that it may have had property *in transitu* on its route,
consigned to one who may be a debtor at the time of issuing
and serving the writ? No case has been cited by appellees
in which such a proceeding has been sustained, and in the
absence of precedent we should be strongly inclined to hold
that companies were not so liable; certainly not, out of the
county where the property delivered to them for transporta-
tion is situate. Any other rule would make railway com-
panies collecting agents of creditors, and that, too, at the risk
of these companies. They are common carriers of all kinds of
manufactured and agricultural products, having a lien upon
the articles delivered, for the freightage. They are obliged,
under ordinary circumstances, to carry all that shall be de-
livered to them, and they discharge their duty by carrying
and delivering according to the contract. It is not their busi-
ness, nor is it their interest, to know to whom the various
articles belong, nor should it be required of them that con-
flicting claims to the property entrusted to them, should be
adjusted through controversies, the burden, annoyance and
expense of which they must bear. When the goods are in
the depot of a railway company, in the county in which the
attachment proceedings are instituted, there could, perhaps,
be no objection to such process, but on this point we express
no definite opinion. When the property has left the county
and is in transit to a distant point, though on the same line
of railway, it would be unreasonable to subject the company
to the costs, vexation and trouble of such a process, merely
because it had received to be carried that which the law
compelled them to receive and carry."

In the very well considered case of M. C. R. R. Co. v.
C. & M. S. R. R. Co., 1st Ill. Appellate Court, 399, this ques-
tion is carefully considered, and we quote from the 3d point
of the syllabi, as follows:

"COMMON CARRIER—EXEMPT FROM GARNISHEE PROCESS:
Although a railroad company, in so far as its organization and

proprietorship of its franchises is concerned, is a private cor-
poration; yet, so far as it performs the functions of a common
carrier, its duties are public. A common carrier is bound
to serve the public fairly and with out unjust discrimination;
and to transport and deliver freight with reasonable dispatch,
and in the absence of express contract, nothing can excuse
it for non-delivery at the point of destination, except the act
of God or the public enemy. Hence there would seem to be no
reason why substantially the same considerations which ex-
empt public officers and agents in the discharge of their offi-
cial duties from the operation of the same statute, may not also
be extended to the case of common carriers, whenever its
application will manifestly and necessarily interfere with the
proper discharge of their public duties."

In the case of Bates v. C. M. & St. P. R. R. Co., 60 Wis.
206, this question is discussed at length, and we quote from the
opinion of the court, as follows:

"The exact question is this: Can a common carrier be
held liable, upon a garnishee summons, for personal chattels
in his possession in actual transit at the time the summons is
served?

"We think that public policy, and the proper discharge
of the duties imposed upon common carriers of personal chat-
tels placed in their possession for carriage, requires that this
question should be answered in the negative; and we think
so, notwithstanding the very broad language of the statute
above quoted. That railroad corporations, as well as individ-
uals and other corporations, are subject to the garnishee pro-
cess must be admitted, and that in proper cases they must be
held to respond as individuals. This court has so held as to
debts due from the railroad company to the principal debtor
in the action. The nature of the possession and control which
the railroad company has of and over personal property in
actual transit; the interruption of business, and the general
inconvenience which must necessarily result from holding such
property the subject of garnishee process,—it appears to us
are amply sufficient to justify us in making such property an
exception to the general rule, in the absence of any positive
declaration of the Legislature subjecting such property to the

process. Notwithstanding the general language used in statutes of this kind, the courts have established many exceptions, depending upon the nature and character of the possession and control which the person or corporation proceeded against has over the property in his or its possession. This court has established many exceptions, where it is admitted the language of the statute was broad enough to include the corporations or officers excepted by the courts. Burnham v. Fond du Lac, 15 Wis. 193; Hill v. La C. & M. R. R. Co., 14 Wis. 291; Buffham v. Racine, 26 Wis. 449; Merrill v. Campbell, 49 Wis. 535. So this court, as well as others, has made exceptions, and taken cases out of the general words of the statute on account of the nature of the indebtedness of the garnishee which is sought to be reached by the garnishee process. Thus, where the debt sought to be reached is in the form of negotiable promissory note or bill of exchange, the debtor is not held chargeable as garnishee except under a showing of facts which will clearly protect him against the actual holder of the note or bill. Carson v. Allen, 2 Pin. 457; Davis v. Pawlette, 3 Wis. 300; Mason v. Noonan, 7 Wis. 609; State ex rel. Rogers v. Burton, 11 Wis. 50; Beck v. Cole, 16 Wis. 95. These cases are abundant to show that where the public good requires it, or when it is necessary to protect the rights of the garnishee, the courts have not hesitated to say that the general words of the statute should be construed not to include the party or the peculiar subject matter of the controversy."

We quote from the recent case of Stevehoy v. Eastern R. R. Co., decided by the Supreme Court of Minnesota, and reported in 63 N. W. Rep. 256, as follows:

"It appears that the property for which the plaintiff seeks to hold the garnishee liable was, at the time of the service of the summons, in the possession of the garnishee, merely as a common carrier, for transportation from St. Paul, in this state, to West Superior, Wis., the place of consignment; that the car in which the property was formed a part of a regular train operated in transporting freight between the places named; that the train was already made up and was standing on a siding in St. Paul, ready to start for Superior; that thereafter the property was transported to West Superior, and there

delivered to the consignee. We do not deem important the fact that the train had not yet moved out of the St. Paul yard. The property was none the less in the possession of the garnishee, as common carrier, for transportation to the place of consignment. In contemplation of law, it was in transit. The courts have not infrequently been confronted with the question whether a common carrier can be held liable to judgment on the process of garnishment merely on the ground that it may, at the time of the service of the process, have had property in transit on its route belonging to the defendant debtor. The objections, on grounds both of public policy and of injustice to the carrier, to holding the carrier liable under such circumstances, have been fully recognized by the courts, and have led them, notwithstanding the broad language of the statutes, to deny or limit the liability of the carrier under such circumstances. See Bates v. Railway Co., 60 Wis. 296; 19 N. W. 72; Railway Co. v. Cobb, 48 Ill. 402. In passing on the question, the courts have not, as a rule, gone further than was necessary for the purpose of deciding the particular case under consideration, and hence their decisions do not always lay down a definite rule of universal application; but we have found no case where a court has placed a literal and unlimited construction upon the broad language of statutes of garnishment, except Adams v. Scott, 104 Mass. 164."

See also Western Railroad Company et al. v. Thornton, 60 Georgia, 300.

4. The evidence presented in the court below disclosed, without the slightest contradiction, that the property seized under the writ of attachment was the property of one J. Gibbs, who was not a party to the action in which the writ issued, and there is a strong line of authorities that hold that the railroad company would not be excused under its contract of carriage from failing to deliver this property because of its seizure under a writ of attachment against parties who had no interest in the property.

In the case of Edwards v. White Line Transit Co., 104 Mass. 159, the court held:

"It is no defense to an action against a common carrier for breach of his contract to deliver goods that they were

taken from him by the officer under an attachment against a person who was not their owner."

That is exactly the case here: The officer took the goods from the possession of the railroad company under a writ that was not issued against the owner of the goods; and in the above case, where the common carrier was sued for a breach of its agreement to safely deliver the property, it set up as a defense that the fulfillment of its contract to deliver the goods was rendered impossible by the intervention of a superior power, which necessarily excused it from such performance, and that it could not be held liable for transporting and delivering goods so taken from it; but the court held that this was no defense, and said:

"The carrier is not relieved from the fulfillment of his contract, or his liability as a carrier by the intervention of such an act of dispossession, any more than he is by destruction from fire or loss by theft, robbery, or unavoidable accident. In neither case is he liable in trover for the conversion of the property, but he is liable on his contract or upon his obligation as a common carrier. The owner may, it is true, maintain trover against the officer who took the property from the carrier, but he is not obliged to resort to him for his remedy. He may proceed directly against the carrier upon his contract, and leave the carrier to pursue the property in the hands of those who have wrongfully taken it from him."

See also, Wells v. American Express Co., 55 Wis. 23; Walker v. Detroit, etc., R. Co., 49 Mich. 446.

5. On the 16th day of March, 1898, the writ of attachment containing garnishee summons against the Santa Fe Pacific Railroad Company, was served upon it, by service upon its agent at Albuquerque, New Mexico. After the service of this writ of attachment and garnishee summons, and on the 17th day of March, the property was forcibly taken from the custody, and possession of the railroad company by the sheriff under this writ of attachment. Under the provisions of section 2698, et seq. of the Code of Civil Procedure, the service of the notice of garnishment on the railroad company, effectually attached any property liable

to attachment, in the possession of the railroad company, and from that time the property became property in custodia legis which the railroad company had the right to the possession of until some order was made by the court dispossessing it.   Drake on Attachments, section 452, from which we quote as follows:

"From the time of the garnishment, the effects in the garnishee's possession are considered as in custodia legis, and the garnishee is bound to keep them in safety, and, it was said by the Supreme Court of the United States, is not at liberty to change them, to convert them into money, or to exercise any act of ownership over them.   He acquires a special property in them, as agent of the court, and is entitled to hold them, until the question of his liability is determined, as well against the defendant as against any subsequent purchaser or pledgee; even though the attachment be against a person other than the ostensible owner from whom the garnishee received them.   He has no right to return to the defendant any of the effects of the latter which were in his hands when he was garnished, or which came into them afterwards, if the attachment legally binds effects subsequently received by him; nor can they be lawfully levied on and taken out of his possession."

To show that the sheriff had no right under the writ to take the possession for the company we quote from Waples on Attachment, pages 159 and 160, as follows:

"Property of the defendant, lawfully in the possession of third persons, though it may be subject to garnishment, cannot be actually seized by the sheriff under a writ of attachment, and taken from such persons.   Under statute authorization some such property may be temporarily taken for the purpose of making an inventory, or of separating it from other attachable things which the third possessor does not claim to hold, but there can be no detention of such property to await the judgment in the attachment suit.   And whatever is lawfully in the possession of a lien-holder cannot be attached unless the lien be first removed by payment or otherwise.

"The attaching creditor cannot dispossess third persons of their possession for the same reason that the debtor can-

not; he acquires no greater right to take property under his writ, through the officer, than the defendant has in his personal capacity."

Under section 2710 of the code upon the denial by the railroad company, of its possession of any property of the defendant, in the writ, the plaintiff in the action could have joined issue and have had the question tried, and thus have been fully protected.

WARREN, FERGUSSON & GILLETT for defendant in error.

Under the organic act (sections 10 and 1869, pp. 43-52, C. L. of 1897) and under the territorial act in force prior to August 1, 1897, (section 3136) and the code which then took effect (sub-section 161 of section 2685, C. L. of 1897) a writ of error only lies from "a final judgment or decision of any district court in any civil cause."

We submit that the plaintiff in error here, not having been a party by intervention or otherwise in the action below and not having replevied the case of goods (section 2740, C. L. of 1897), that the order of June 13th, 1898, overruling the motion of the railroad company is not a "final judgment or decision in this cause from which this writ of error will lie." If the question were properly raised upon this record, we submit that, as the court below in the order complained of, recognized the prior lien of the carrier for the freightage due on the case of goods, and it nowhere appears that payment of the amount of such freightage ($7.87) was ever demanded or refused, the order or decision should be affirmed upon the merits, should the writ of error not be dismissed.

Of course defendants in error concede that an attaching creditor can acquire by his attachment of property no greater right in the property than the defendant had at the time of the attachment; and that freight charges are a lien upon the property prior to the attachment lien, which must be first paid. Drake on Att. (6th Edn.), Sec. 245, et seq.; De Wolf v. Dearborn, 4 Pick. 466; Wolfe v. Crawford, 54 Miss. 514; and see Thompson v. Rose, 16 Conn. 71.

The right of stoppage in transitu, if it existed in plain-

tiffs below, did not preclude the attachment. Kelly v. Deming, 2 McCrary 453; 5 Fed. Rep. 697; Calahan v. Babcock, 21 Ohio St. 281; Inslee v. Lane, 57 New Hamp. 454.

The regularity of the proceedings under our attachment act is not raised here.

And although the question as to the character of the transfer of the goods levied upon under the attachment in this case, while in transitu through Bernalillo county, whether fraudulent or valid, might have been raised by the parties, but is not presented in this record. Drake on Att., section 225, and cases cited; Hall v. Stryker, 27 N. Y. 596; Waples on Att., p. 57, and cases cited; 2 Wade on Att., pp. 127-327-439, and cases cited.

It will be observed that the civil code (sub-section 175, p. 714) does not apply to or effect "actions of replevin or writs of attachments;" so that the statute governing attachments (pp. 715 to 725, C. L. of 1897); and those relating to replevin (pp. 725 to 729, C. L. of 1897) were not affected by the code and furnish the remedy in this case for the railroad company; and the plaintiff in error can have no status in this court upon the facts shown in the record, and the order below should be affirmed.

MILLS, C. J.—The case was this: The plaintiffs below, Emil and Juan Bossut, attached a case of goods which were in the possession of the garnishee as a common carrier, and on which a bill of lading had been issued to Isaac Levy, in New York City, the consignee being J. Gibbs, San Francisco, California, claiming that the goods were the property of Frank Pursch and Jacob Kaskel. Neither Levy nor Gibbs ever appeared in the suit, and the plaintiffs recovered judgment against said Pursch and Kaskel. The garnishee filed a motion to have the case of merchandise attached returned to it, but the motion was denied.

Both parties to this proceeding admit that the garnishee railroad company has a special interest in and a lien on the property attached for freight due it, consequently we need not discuss this proposition.

Defendants in error object to our considering this writ of error, on the ground that a writ of error lies only from

"a final judgment or decision of any district court in any civil cause," and that this being only a decision of a motion to return the property taken to the garnishee is not a final decision. It will appear from an examination of the record before us, that final judgment had been taken in the suit and that it was after such final judgment had been taken, that the motion for the return of the property was denied. A final judgment had been given in this case, and a writ of error will lie from it. The writ of error might have been sued out if the motion for the return of the property had never been filed.

Defendants in error further contend that the railroad company not having been a party by intervention or otherwise in the action below cannot prosecute this writ of error. A garnishee is a "party" to the proceedings between the creditor and original defendant, although summoned into the case and treated as a witness; and he may take an appeal therein. Clarke v. Williams, 2 Humph. (Tenn.) 303; Kaylor v. Brunswick, 6 Heisk (Tenn.) 237.

GARNISHMENT: practice: appeal.

The main contention of the garnishee is that the sheriff of Bernalillo county had no right to take from its possession under the writ of attachment property which was in its possession as a common carrier, and on which a bill of lading had been issued agreeing to deliver the property, to a third person, not a party to the suit.

The attorney for plaintiff in error cites a number of cases to the effect that property in the hands of a common carrier is not liable to garnishment when in transit. They do not, however, cite a single case which holds that such property is not liable to attachment. The difference between an attachment of personal property and a garnishment is very great. In the former the property attached is actually taken into the possession of the officer holding the writ and is under his custody and control, while in garnishment proceedings the property is left in the hands of the garnishee. In the case at bar the box of merchandise was attached by the officer, and removed by him.

In this Territory the right of an officer to attach goods in the hands of a common carrier is recognized, McVeagh v. A., T. & S. F. Ry. Co., 3, N. M. 327. The American and English Encl. of Law, page 854, says: "Goods in the custody of a railroad company within the state and county where the writ is issued at the time of the issuance of the writ would seem clearly to be subject to attachment," and numerous cases are cited to sustain the proposition.

ATTACHMENT:
goods in transitu.

We cannot see that the plaintiff in error has any interest in the case of merchandise in question, save to get the freight due it for its carriage. If sued by the consignee for its non-delivery, the case of Stiles v. Davis & Barton, 1 Black. 101, and McVeagh and Co. v. A., T. & S. F. R'y Co., 3 N. M. 327; Am. & Eng. Encyl. of Law, page 854, and numerous cases there cited, are ample defenses for their not doing so.

COMMON carrier:
lien of.

If the goods were really the property of the consignee, J. Gibbs, he has a remedy, as he can bring an action against the officer who seized the goods, or against the plaintiffs in the attachment suit, if the seizure was made under their direction. The consignee knew that the goods were attached, as appears from his affidavit on file in this case, but so far as appears from the record he did not intervene in the attachment suit, never sought to replevy the property, and has not sued either the sheriff or the plaintiffs in the attachment suit for damages for wrongful conversion.

We can see no error in the judgment complained of, and the same is therefore affirmed.

McFie and Parker, JJ., concur;

Crumpacker, J., having tried the case below, and Leland, J., did not participate in this decision.